# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARK PELFREY,                              Case No. 1:10-cv-159
    Plaintiff                            Weber, J.
                                          Litkovitz, M.J.

    vs


COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
    Defendant


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB).  This matter is before the Court on plaintiff's Statement of

Errors (Doc. 11) and the Commissioner's Memorandum in Opposition.  (Doc. 15).

## PROCEDURAL BACKGROUND

Plaintiff Mark Pelfrey was born in 1963 and was 46 years old at the time of the

administrative law judge's (ALJ) decision.  Plaintiff completed the tenth grade and obtained a

GED. He has past relevant work experience as an over the road truck driver.

Plaintiff filed an application for DIB on April 5, 2006, alleging a disability onset date of

October 23, 2005, due to a lower back injury, neck injury, spinal stenosis, nerves, high blood

pressure, and borderline diabetes.  (Tr. 71).  Plaintiff's application was denied initially and upon

reconsideration.  Plaintiff requested and was granted a de novo hearing before an ALJ.  On

October 24, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing

before ALJ James S. Quinlivan.  (Tr. 384-402).  Additional evidence was submitted following

the hearing, and a supplemental hearing was held on May 20, 2009. (Tr. 403-428). In addition

to plaintiff, a vocational expert (VE), Dwight McMillion, appeared and testified at the hearing.

On June 2, 2009, the ALJ issued a decision denying plaintiff's DIB application. The ALJ

determined that plaintiff suffers from severe impairments of shortness of breath; degenerative

stenosis of the lumbar spine L3 through L5; arthralgia of the right hip, thigh and leg;

farsightedness; depressive mood disorder mixed with anxiety; and pain disorder. (Tr. 17).

However, the ALJ determined that plaintiff's physical impairments do not alone or in

combination meet or equal the level of severity described in the Listing of Impairments,

Appendix 1. (Tr. 18).

As to plaintiff's mental impairment, the ALJ found that plaintiff does not meet or

medically equal Listing 12.04. (Tr. 19). The ALJ determined that plaintiff has mild restriction in

activities of daily living; moderate difficulties in social functioning; moderate difficulties with

regard to concentration, persistence or pace; and no episodes of decompensation which had been

of extended duration. (*Id.*).

According to the ALJ, plaintiff has the residual functional capacity (RFC) to perform at

least light work as defined in 20 C.F.R. § 404.1567(b) with the following restrictions: He can

stand for at least half a workday but for no more than 1 hour at a time; he can sit for at least 6

hours in a workday but for no more than 2 hours at a time; no pushing or pulling with the lower

extremities; no sustained overhead work; no climbing hills or slopes or working at uneven

terrain; no climbing ladders or working or balancing at heights; occasional climbing of stairs,

steps or ramps; occasional bending, stooping, crouching and kneeling; no prolonged or full

squatting; no crawling; no balancing on right leg only; no working around heavy moving

2

machinery or exposure to excessive floor vibrations; no operating mobile equipment or exposure to jarring, jostling or jolting; no operating right foot pedal-controlled equipment; no exposure to excessive air pollutants, pulmonary irritants or allergens; no exposure to temperature extremes or coldness or damp, humid conditions; must be permitted to wear corrective eyeglasses as desired; and should be permitted to wear protective devices or hearing aids as appropriate with no exposure to excessive noise. (Tr. 20). In addition, plaintiff would have a moderately limited ability to interact with supervisors and co-workers; moderately limited ability to understand, remember and carry out complex instructions or make judgments on complex work related decisions; no impairments with understanding, remembering and carrying out simple tasks; mildly limited ability to work with the public; and mildly limited ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*).

The ALJ determined that plaintiff's RFC to perform light work prevents him from performing his past relevant work as an over the road truck driver, which the VE had classified as medium work. (Tr. 24). The ALJ further determined that using Medical-Vocational Rule 202.21 as a framework for decisionmaking, and relying on the testimony of the VE, plaintiff is capable of performing a significant number of jobs in the national economy, including jobs as a routing clerk, machine tender/operator, general production inspector, inspector, hand packer, and security monitor. *Id.* Accordingly, the ALJ concluded that plaintiff is not disabled under the Social Security Act. (Tr. 24-25).

Plaintiff's request for review by the Appeals Council was denied (Tr. 6-9), making the decision of the ALJ the final administrative decision of the Commissioner.

## MEDICAL RECORD

Dr. Henry Goodman, M.D.

Plaintiff was followed by Dr. Henry Goodman from June 2001 through February 2002 for the sudden onset of right sacroiliac pain radiating to the right lower extremity. (Tr. 296-311, 320-333). Flexeril and Ibuprofen had not relieved the pain. When he was first seen by Dr. Goodman, plaintiff appeared to be in extreme pain. Range of motion of the back was limited due to severe pain, and plaintiff had extreme pain to palpation of the right SI joint and the right sciatic notch. An MRI of the lumbar spine showed significant spinal stenosis at L3-L4 and L4-L5. Nerve conduction studies and an EMG showed L3-4 and L5 radiculopathy on the right. Dr. Goodman prescribed Zofran and Oxycontin for pain relief and a course of physical therapy. In July 2001, Dr. Goodman recommended that plaintiff see a neurosurgeon as he had not progressed very well and was unable to return to work. In August, plaintiff remained in significant pain and exhibited marked depression. Plaintiff was referred to a pain specialist for epidural steroid injections and a right SI block. He was continued on Oxycontin.

On September 20, 2001, Dr. Goodman questioned plaintiff's motivation to return to work, noting that plaintiff was able to bend over and tie his shoe laces, get down, and turn his back without exhibiting pain. (Tr. 323-324). Dr. Goodman also questioned why plaintiff would be experiencing pain in the only two spots where he claimed to have pain, which were his right sacroiliac joint and mid-lateral lower right thigh. Dr. Goodman continued plaintiff on Oxycontin with an eventual plan to get plaintiff completely off the drug. Dr. Goodman found no reason plaintiff could not drive a truck as long as he did not have to do heavy lifting. He thought

4

plaintiff should return to work with a 15 to 20 pound lifting restriction if Dr. Jerrel Boyer agreed with that assessment after plaintiff's appointment with him.

### Dr. Jerrel H. Boyer, D.O.

Plaintiff saw Dr. Boyer on September 27, 2001, at the Tri-state Christian Neurological Association after plaintiff had received a sacroiliac joint injection. (Tr. 334). Plaintiff reported that his pain was unchanged. Dr. Boyer noted mild findings on the MRI and questioned whether the symptoms were in fact radicular. Dr. Boyer cleared plaintiff to return to work with a 10-pound lifting restriction to be re-assessed when plaintiff saw Dr. Goodman again.

### Dr. David Justice, D.O.

Dr. David Justice, D.O., treated plaintiff from October 10, 2005 to April 1, 2008. (Tr. 193-224, 252-261). In October 2005, plaintiff reported back pain into his legs which he had suffered for four to five years with a flare-up over the preceding two weeks. He reported some relief from Lortab. In January 2007, plaintiff's gait and stance were abnormal. The assessment was lumbar spinal stenosis. Dr. Justice recommended a new MRI with possible follow-up of physical therapy, surgery, or a pain clinic referral. In October 2007, plaintiff complained of finger joint pain and stiffness in addition to radiating back pain. Throughout the course of his treatment with Dr. Justice, plaintiff complained of worsening lower back pain radiating down the back of the lower extremities, which worsened with sitting and walking, and depression. There was tenderness on palpation and spasms of the paraspinal muscles and positive straight leg raising on the right. Mood was abnormal and dysphoric. Dr. Justice diagnosed plaintiff with lumbar radiculopathy and depression, which was well-controlled as of April 2008.

Basedow Family Clinic

Plaintiff was seen at the Basedow Family Clinic from May to September 2008 for complaints of back pain. (Tr. 233-245). Plaintiff had normal external auditory canals and TMS. He had normal range of motion of the neck without pain, restricted paravertebral motion with decreased side bending and rotation bilaterally, pain with straight leg raising at 20 degrees, and sensory deficit of the left lower extremity. The diagnoses included spinal stenosis and depression.

Ebenezer Medical Outreach, Inc.

Plaintiff was treated at Ebenezer Medical Outreach from March 2006 through July 2008. (Tr. 182-192, 272-291). He complained of hypertension, borderline diabetes, "nerves," spinal stenosis, muscle spasms in his feet and legs, worsening pain in his legs and buttocks, and depression. He reported that he had smoked a pack of cigarettes a day for 30 years. He had lumbosacral pain on palpation and at the hips on flexion and extension.

Glen R. Imlay, M.D.

Plaintiff was seen by Dr. Glen P. Imlay from June to September 2008. (Tr. 263-271). Dr. Imlay diagnosed plaintiff with chronic pain and lumbar neuritis of the right lower extremity and noted a referral diagnosis of spinal stenosis. (Tr. 270). Lumbar range of motion was decreased with pain into the right leg. Plaintiff's medications included Lortab, Valium, Ambien, Flexeril, Lodine, Etoldolac and Gabapentin. (Tr. 270). A lumbar xray showed evidence of mild degenerative joint and disc disease without evidence of instability.

6

<u>Dr. Cindi Hill, M.D.</u>

Dr. Cindi Hill, a family practitioner, completed a physical RFC assessment of plaintiff on December 14, 2006. (Tr. 173-181, 225-226). Dr. Hill determined that plaintiff could occasionally lift and/or carry 20 pounds; he could frequently lift and/or carry 10 pounds; he could stand and/or walk for a total of 6 hours in an 8-hour workday and a medically required handheld assistive device was necessary for ambulation; he could sit for a total 6 hours in an 8-hour workday; and his ability to push and/or pull was unlimited. (Tr. 174). As support for these findings, Dr. Hill noted:

> 12/06 NL C-spine. Lumbar WNL. Walked with cane at both IM and psyc CEs. Reported he could not heel-toe walk. Decreased ROM lumbar and hips. DTRs +2/4; SLR+.

> HTN appears controlled; no evidence of end organ damage. Cane use appears by the CE to be medially [sic] supported. He does use it consistently as well across the CEs.

(*Id.*). Dr. Hill further determined plaintiff could occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds, and he could occasionally balance, stoop, kneel, crouch and crawl. (Tr. 175). The only other limitation she imposed was that he should avoid concentrated exposure to hazards such as machinery and heights. (Tr. 177). Dr. Hill opined that the severity of plaintiff's symptoms and the alleged effect on function was consistent with statements by plaintiff and others and with alterations of usual behavior or habits but was not consistent with observations regarding activities of daily living. Dr. Hill stated that "Clmt's allegations appear partially credible and attributable to MDI. Subjective complaints are out of proportion to objective findings." (Tr. 178).

7

Dr. David Provaznik, D.O.

Dr. David Provaznik examined plaintiff for purposes of rendering a disability determination on December 1, 2006. (Tr. 164-172). A cervical spine xray was normal. A lumbosacral spine xray showed normal vertebral bodies, disk spaces, posterior elements and sacroiliac joints. The impression portion of the report stated: "Transitional vertebral body segment is noted. Small radiopaque foreign body identified overlying the left upper quadrant." (Tr. 170). Dr. Provaznik performed manual muscle testing and range of motion tests. There was positive and modified straight leg raising with the left worse than the right and poor flexion to 40 degrees at the lumbosacral spine. Plaintiff had flexed over ambulation and sat flexed at the waist. Dr. Provaznik noted that plaintiff reported he was unable to toe-gait and he ambulated with a cane. Dr. Provaznik concluded that "his immobility, his ambulation with a cane would preclude him from occupational endeavors." (Tr. 172).

Dr. Stephen Nutter, M.D.

Dr. Stephen Nutter, a consultative occupational medicine specialist, examined plaintiff on December 16, 2008. (Tr. 337-339). Plaintiff complained of intermittent neck pain, constant back pain, joint pain, and constant knee and ankle pain. (Tr. 337). Plaintiff reported that he had quit smoking seven years earlier. (Tr. 338). According to Dr. Nutter, although plaintiff ambulated with a limping gait and a cane in the left hand, he does not require a handheld assistive device. Plaintiff was stable at station but appeared to be uncomfortable in the supine and sitting positions. The Odynometer measured diminished grip strengths bilaterally, but on physical exam grip strength was not diminished and was 5/5 bilaterally. There was no pain, spasm or tenderness of the cervical spine. Plaintiff had pain on examination of the lumbar spine

8

and tenderness to palpation. There was evidence of bony enlargement of the right 1st MTP joint

of the right lower extremity. Straight leg raising in both legs was limited at the outset due to

back pain and very strong resistance, and hip range of motion was reduced due to pain and strong

resistance. There was right hip joint tenderness. Plaintiff exerted submaximal voluntary effort

and displayed give away weakness on strength testing. There were no sensory abnormalities. Dr.

Nutter's impressions were chronic back and neck pain and arthralgia.

### Shawnee Mental Health Center

Plaintiff was treated at the Shawnee Mental Health Center from June to November 2008

for depression and intermittent psychosis. (Tr. 353-370). He was assigned a GAF score[1] of 50-

60 in July 2008. Although sad and despondent, plaintiff reported that he was doing well on

medications of Zoloft and Seroquel in November of 2008. He was continued on medication at

that time.

### Dr. James Rosenthal, Psy.D.

Dr. Rosenthal, a clinical psychologist (Tr. 229), performed a consultative psychiatric

examination of plaintiff on June 30, 2006 (Tr. 145-161) and again on March 13, 2009, following

the initial ALJ hearing. (Tr. 372-380). Dr. Rosenthal diagnosed plaintiff with a depressive

disorder NOS and assigned him a GAF of 65 in June 2006. (Tr. 148). In March of 2009, Dr.

---

[1]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id*. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id*. The next higher category, for scores of 61 to 70, refers to an individual with "some mild" symptoms who is "generally functioning pretty well." *Id*.

Rosenthal diagnosed plaintiff with pain disorder associated with a general medical condition with psychological features and opioid dependence on agonist therapy and assigned him a GAF of 60. (Tr. 375). Dr. Rosenthal assessed plaintiff's work-related mental abilities as follows:

1. Ability to understand, remember and follow simple one or two-step job instructions: Not impaired
2. Ability to relate to bosses, coworkers and the general public: Mildly impaired
3. Ability to tolerate the stress of day-to-day employment: Moderately impaired
4. Ability to sustain attention and concentration to complete daily work tasks: Mildly impaired.

(Tr. 376). Dr. Rosenthal found that plaintiff was moderately restricted in his ability to make judgments on complex work-related decisions; to understand, remember and carry out complex instructions; and to interact appropriately with supervisors and co-workers. (Tr. 377-78). Dr. Rosenthal found that plaintiff was mildly restricted in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 378).

Dr. Steven J. Meyer, Ph.D.

Dr. Steven Meyer, a state agency psychologist (Tr. 227), completed a Psychiatric Review Technique form on September 25, 2006. (Tr. 149-161). He noted plaintiff's diagnosis as Depressive Disorder NOS. (Tr. 152). Dr. Meyer found that plaintiff's ability to relate to bosses, co-workers and the general public was mildly impaired; his ability to sustain attention and concentration to complete daily work tasks may be mildly impaired; his ability to tolerate the stress of day-to-day employment appeared to be mildly impaired; and his ability to sustain attention and concentration to complete daily work tasks was mildly impaired. (Tr. 148). Dr.

Meyer rated plaintiff's degree of limitation as follows:

- Restriction of Activities of Daily Living: None
- Difficulties in Maintaining Social Functioning: Mild
- Difficulties in Maintaining Concentration, Persistence or Pace: Mild
- Episodes of Decompensation, Each of Extended Duration: None

(Tr. 159). Dr. Meyer opined that plaintiff did not satisfy the "C" criteria of the Listing. Dr.

Meyer found plaintiff to be credible but found no support for "severe impairment of functioning

for psych within any physical conditions." (Tr. 161).

### PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearings that he worked as a truck driver until he

lost his commercial drivers license (CDL) in 2005 because of a DUI for prescription pain

medication. (Tr. 390, 392, 394). Plaintiff testified that he sustained a work injury in April of

2001 when he was driving his truck to Louisville. (Tr. 409). His lower back started hurting very

badly and he had the sensation of someone "wringing out a towel" in the muscles of his right leg.

(*Id.*). He testified that he has spinal stenosis which starts in his hip and goes to his buttocks and

beyond his legs and that his right leg is numb. (Tr. 395). Plaintiff also has intermittent neck pain

12 to 24 times a week for which he does exercises. (415-416). The pain goes into his right arm

and precludes him from raising his arms above his head. (Tr. 416). Plaintiff can lift about five

pounds using both hands. (Tr. 416-417).

Plaintiff stated that his treating physician, Dr. Goodman, had referred him to a

neurosurgeon in 2000 or 2001, but the neurosurgeon would not perform surgery because it was

too dangerous. (Tr. 395-396). Instead, Dr. Goodman prescribed Oxycontin and plaintiff went

through 12 weeks of physical therapy, which was not helpful. (Tr. 396). Plaintiff continued to

11

see other physicians, who prescribed medication for him. (Tr. 397-98). Plaintiff testified that his right leg is constantly numb. (Tr. 398). Plaintiff was using a cane the day of the hearing, which he stated his treating physician, Dr. Justice, had prescribed for him. (Tr. 398-99). He can walk about one-third of a mile with a cane before he needs a break and about a block without the cane. (Tr. 413). Plaintiff testified that nothing relieves the back pain and he cannot sit or lie in one position for a prolonged period of time. (Tr. 412-413). He can sit in a chair for five minutes before he needs to change position, stand in a particular location for about three minutes, and lie down for about 30 minutes before he has to get up and move around. (Tr. 413). Plaintiff testified that cold rainy weather makes his conditions worse, climbing up stairs and twisting is difficult, he can bend somewhat but cannot stoop down with his knees, and he has memory and concentration problems. (Tr. 420-421).

Plaintiff testified that although he had gone back to work following physical therapy in 2001, driving his truck made his back pain worse. (Tr. 413-414). Plaintiff also testified that he had very recently attempted to have his CDL reinstated but there were blocks on it in two states and he would need to retake the test to get his license back. (Tr. 414).

Plaintiff testified that he had sought mental health treatment for depression, auditory hallucinations and nerves. He said he still hears voices and has urges to hurt other people, but he has not acted on them. (Tr. 417). He is on medication, which helps his nerves somewhat. (*Id.*). He has had difficulty sleeping and thoughts of hurting himself. (Tr. 418). He sleeps about four and one-half hours a night due to his physical and mental problems. (*Id.*).

As to his daily activities, plaintiff testified that he gets up and takes his wife to dialysis, drops his granddaughter off at school, goes home, sits on the porch for a little bit, watches

television, tries to straighten up the house a bit, picks his wife up, repeats his routine, picks his

granddaughter up at 3:00, and then repeats his routine.  (*Id.*).  He testified that he tries to vacuum

but it is difficult to push the vacuum without holding on to his cane and it becomes a problem

after a while, he cannot cut the grass, and he pays someone to do housekeeping once a week.  (Tr.

419).  He has trouble straightening up his 8 year old granddaughter's room, fixing her something

to eat, and helping her with her schoolwork.  (*Id.*).  He sits in the bleachers when he watches his

granddaughter's cheerleading activities, and he either takes a chair or sits in the car to watch her

practices.  (Tr. 420).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).

The Court's sole function is to determine whether the record as a whole contains substantial

evidence to support the Commissioner's decision.  The Commissioner's findings stand if they are

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co.

v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  In deciding whether the Commissioner's findings are

supported by substantial evidence, the Court must consider the record as a whole.  *Hephner v.

Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age

65, file an application for such benefits, and be under a disability as defined by the Social

Security Act.  42 U.S.C. §§ 416(1), 423.  Establishment of a disability is contingent upon two

findings.  First, plaintiff must suffer from a medically determinable physical or mental

13

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments. An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). *See also Bowen v. Yuckert,* 482 U.S. 137 (1987). If the individual does not have a severe impairment, then a finding of nondisability is made and the inquiry ends.

Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits. It is sufficient if the impairment is medically equivalent to one in the Listing. 20 C.F.R. § 404.1520(d). To determine medical equivalence, the

14

Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. § 404.1526(a). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). If the impairment meets or equals any within the Listing, the Commissioner renders a finding of disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981).

Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Kirk*, 667 F.2d at 529.

Plaintiff has the burden of proof at the first five steps of the sequential evaluation process. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform

15

alternate work considering plaintiff's age, education, and background, as well as the job requirements. *Wilson*, 378 F.3d at 548. *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at 548.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). Likewise, a treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson*, 378 F.3d at 544.

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(d). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii);

16

*Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(3)-(6); *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(d)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(d). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). The weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(d)(3).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the

17

pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In addition to the objective medical evidence, the Commissioner must consider other evidence of pain, such as statements or reports from plaintiff, plaintiff's treating physicians and others about plaintiff's prescribed treatment, daily activities, and efforts to work, as well as statements as to how plaintiff's pain affects his daily activities and ability to work. *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529(a)). Specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Id.*; 20 C.F.R. § 404.1529(a). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *Duncan,* 801 F.2d. at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

Where the medical evidence is consistent and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, there is both substantially

conflicting medical evidence as well as substantial evidence supporting a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Social Security Regulation 96-7p describes the requirements by which the ALJ must abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

(emphasis added).

19

**OPINION**

Plaintiff assigns two errors in this case.  First, plaintiff contends the ALJ erred by failing

to properly consider the combined impact of his impairments.  Second, plaintiff contends that the

ALJ erred by failing to properly evaluate his pain and credibility.

**I.  The ALJ properly considered the combined effect of plaintiff's impairments.**

Plaintiff claims that the ALJ failed to adequately consider a number of his physical

impairments and resulting limitations.  These include a ten-pound lifting restriction imposed on

him by Dr. Boyer, which plaintiff argues would restrict him to sedentary work (Tr. 334);

symptoms of radiculopathy, which plaintiff contends would impose walking and standing

limitations in excess of those acknowledged by the ALJ; and limitations on gripping and

handling resulting from plaintiff's osteoarthritis.[2]  Plaintiff claims that these conditions "would

certainly impact a person's ability to maintain any level of employment." (Doc. 11 at 13).

While it is clear the ALJ must consider the combined effect of plaintiff's impairments in

assessing his eligibility for disability benefits, *see Foster v. Bowen,* 853 F.2d 483, 490 (6th  Cir.

1988), there is substantial evidence in the record establishing the ALJ did so in this case.  The

ALJ determined that plaintiff suffers from the severe impairments of shortness of breath;

degenerative stenosis of the lumbar spine L3 through L5; arthralgia of the right hip, thigh and

leg; farsightedness; depressive mood disorder mixed with anxiety; and pain disorder.  (Tr. 17).  It

is apparent that the ALJ took the combined effect of these impairments into account when he

rendered his detailed and thorough RFC determination.  In addition to referencing numerous

_____

[2]Plaintiff addresses the ALJ's alleged failure to consider his radiculopathy and purported inability to grasp
and handle objects as part of his second assignment of error, but the Court finds it is appropriate to consider these
arguments in connection with plaintiff's first assignment of error.

other impairments and symptoms, the RFC referenced plaintiff's low back pain, radiculopathy and joint pain and imposed specific limitations resulting from these symptoms. (Tr. 20).

Plaintiff has not shown that the ALJ erred by failing to impose even greater limitations than those set forth in his RFC determination. First, substantial evidence supports the ALJ's determination that plaintiff is limited to lifting 20 pounds occasionally and 10 pounds frequently. The ALJ's finding is consistent with the RFC assessment issued by the state agency physician, Dr. Hill. (Tr. 174). No medical or other evidence in the record contradicts Dr. Hill's finding. To the contrary, the only other medical evidence in the record as to lifting restrictions dates back to September 2001, four years prior to the alleged disability onset date, at a time when plaintiff was off work temporarily due to the sudden onset of back pain. At that time, plaintiff's treating physician, Dr. Goodman, questioned plaintiff's motivation to return to work and suggested that plaintiff return to work with a 15 to 20 pound lifting restriction if Dr. Boyer was in agreement. (Tr. 323-324). After examining plaintiff, Dr. Boyer opined that plaintiff could return to work with a 10-pound lifting restriction, which he indicated was temporary by stating that the restriction should be reassessed when plaintiff saw Dr. Goodman again. (Tr. 334). There is no indication in the record that Dr. Goodman or any other physician thereafter extended the short-term 10-pound lifting restriction imposed by Dr. Boyer.

Substantial evidence likewise supports the ALJ's determination as to the limitations imposed by plaintiff's radiculopathy. The ALJ found that due to low back pain radiating down plaintiff's right lower extremity and degenerative disc stenosis from L3 to L5, plaintiff was limited to no pushing or pulling with the lower extremities; no sustained overhead work; no climbing hills or slopes or working at uneven terrain; no climbing ladders or working or

21

balancing at heights; occasional climbing of stairs, steps or ramps; occasional bending, stooping, crouching and kneeling; no prolonged or full squatting; no crawling; no balancing on right leg only; no working around heavy moving machinery or exposure to excessive floor vibrations; no operating mobile equipment or exposure to jarring, jostling or jolting; and no operating right foot pedal-controlled equipment. (Tr. 20). The ALJ further determined that plaintiff was limited to standing for half a workday but for no more than 1 hour at a time and to sitting for at least 6 hours in a workday but for no more than 2 hours at a time. (*Id.*). While plaintiff argues that he would "certainly have limitations in standing/walking that would exceed those listed by the ALJ" given his radiculopathy, the only evidence plaintiff offers to support his argument are tests performed in 2001 showing stenosis and signs of radiculopathy and a 2008 diagnosis of lumbar neuritis. (Doc. 11 at 14). This evidence is insufficient to demonstrate that the standing and walking limitations imposed by the ALJ are not supported by substantial evidence.

Third, plaintiff's argument that the ALJ committed clear error by failing to assess some limitation for his osteoarthritis is not well-taken. (Doc. 11 at 14). Plaintiff claims the ALJ should have limited plaintiff's ability to grip and handle objects based on the findings of Dr. Nutter, the consultative examining physician, who found grip strength diminished and bony enlargement. However, the ALJ did take plaintiff's osteoarthritis into account and imposed restrictions that plaintiff not be exposed to cold temperature extremes or damp, humid conditions because of his joint pain. Moreover, while Dr. Nutter found diminished grip strength bilaterally as measured by the Odynometer, he noted that on physical exam grip strength was not diminished. (Tr. 338). Plaintiff points to no other evidence showing limitations in this area. Thus, the ALJ committed no error in this regard.

22

Plaintiff alleges that when his physical conditions are combined with his mental conditions, he is unable to perform any work. Plaintiff notes that he was treated at Shawnee Mental Health Center for his mental conditions and his symptoms included auditory hallucinations with psychotic symptoms, a desire to hurt other people, agitation, and a diagnosis of schizophrenia. (Tr. 368-370). However, the record shows that the ALJ properly evaluated plaintiff's mental limitations in combination with his physical impairments. The ALJ properly considered the opinions of Dr. Meyer, the state agency psychologist, and Dr. Rosenthal, the consultative examining psychologist. The ALJ determined that plaintiff had mild restriction in activities of daily living, moderate difficulties in his social functioning, moderate limitations in his ability to maintain concentration, persistence or pace, and no periods of decompensation. (Tr. 19). The ALJ also accepted the opinion of Dr. Rosenthal that plaintiff's ability to understand, remember and follow simple one or two-step job instructions was not impaired; his ability to relate to bosses, co-workers and the general public was mildly impaired; his ability to tolerate the stress of day-to-day employment was moderately impaired; his ability to sustain attention and concentration to complete daily work tasks was mildly impaired; his ability to understand, remember and carry out complex instructions was moderately impaired; and his ability to respond appropriately to usual work situations and to changes in a routine work setting was mildly impaired. (Tr. 23). In addition, the ALJ imposed a moderately limited ability to interact with supervisors and co-workers as part of plaintiff's RFC. (Tr. 20). No doctor opined that plaintiff's mental impairment imposes limitations more severe than these limitations found by the ALJ. While plaintiff argues that his mental limitations would "certainly impact a person's ability to maintain any level of employment" (Doc. 11 at 13), he fails to explain how or to

provide any authority for this argument. To the contrary, the case record shows that the ALJ's decision as to the degree of plaintiff's mental impairment is supported by substantial evidence.

In short, the ALJ's decision reflects that he considered all of plaintiff's impairments in combination in formulating plaintiff's RFC. The RFC took into account both the exertional and non-exertional limitations caused by plaintiff's various severe impairments. Moreover, the hypothetical posed to the VE, upon whose testimony the ALJ relied, included all the various limitations found to result from the combination of such impairments. Accordingly, the ALJ did not err by failing to consider the combination of plaintiff's impairments. The Court therefore determines that plaintiff's first assignment of error is not well-taken and should be overruled.

## II. The ALJ properly evaluated plaintiff's pain and credibility.

Plaintiff argues that the ALJ erred by not adequately considering the significant pain he experiences as a result of his several medical ailments, as well as the difficulty he has with concentration due to his pain levels. Plaintiff claims that the ALJ improperly dismissed the testimony and medical evidence supporting his complaints of back and leg pain. In support of his arguments, plaintiff cites to various medical records which document that he has been diagnosed with spinal stenosis and chronic low back pain, lumbar radiculopathy, diabetes mellitus, osteoarthritis, depression, and lumbar neuritis. (Doc. 11 at 13, citing Tr. 172, 197, 258, 267, 268, 302, 307). Plaintiff also cites to MRI and test results from 2001 showing stenosis at L3-4 and L4-5 and radiculopathy.

The record shows that the ALJ properly considered the various medical impairments which plaintiff claims cause him disabling pain. The ALJ accepted that plaintiff has medically determinable severe impairments which can reasonably be expected to cause the alleged

symptoms. (Tr. 22). However, the ALJ reasonably rejected plaintiff's complaints of disabling

pain as unsupported by the medical evidence of record. First, the ALJ was not bound by the

opinion of total disability offered Dr. Provaznik, an osteopath, who opined that plaintiff's

immobility and ambulation with a cane would preclude him from all occupational endeavors.

(Tr. 172). As the ALJ correctly stated, a determination as to whether a claimant is disabled or is

unable to work is an issue reserved to the Commissioner and will not be given controlling

weight. (Tr. 23). *See* 20 C.F.R. § 404.1527(e)(1); *Workman v. Commissoner of Social Security*,

105 F. App'x 794, 800 (6th Cir. 2004). Dr. Provaznik's opinion that plaintiff is "unable to work"

because he must use a cane is an opinion on the ultimate issue of disability which the ALJ was

entitled to reject.

Furthermore, to the extent Dr. Provaznik did render any medical opinions, his opinions

are not entitled to the controlling weight generally accorded the opinions of a treating source.

The record includes notes of only one office visit with Dr. Provaznik, and those notes reflect that

the visit was for the purpose of rendering a "disability determination."[3] (Tr. 172). In addition,

plaintiff did not list Dr. Provaznik as one of his treating physicians during his testimony. (Tr.

395-399). Thus, Dr. Provaznik cannot be considered a treating source.

Moreover, the ALJ stated that he had considered Dr. Provaznik's opinion and found it be

inconsistent with the overall medical record. (Tr. 23). The ALJ stated that he had instead

assigned "great weight" to the opinion of Dr. Hill because he found Dr. Hill's opinion to be

---

[3]The ALJ characterized Dr. Provaznik as plaintiff's "family physician" (Tr. 23), but the actual nature of his doctor/patient relationship with plaintiff is not clear. There is no indication in the record, however, that Dr. Provaznik was plaintiff's treating physician for purposes of this case. *See* 20 C.F.R. § 404.1502 ("A physician qualifies as a treating source if the claimant sees [him] 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'").

consistent with the overall medical evidence. (*Id.*). The ALJ rendered an RFC determination consistent with the limitations found by Dr. Hill. In her RFC assessment, Dr. Hill found limitations which were supported by plaintiff's self-report that he could not heel-toe walk and by medical findings which included decreased range of motion of the lumbar spine and hips, positive straight leg raising, and plaintiff's medically-supported use of a cane for ambulation. (Tr. 174-175). Plaintiff does not point to medical or other evidence in the record which contradicts Dr. Hill's findings or her RFC assessment. Thus, the ALJ's determination that plaintiff's severe impairments do not cause him disabling pain is supported by substantial medical evidence.

In addition, plaintiff has not shown that the ALJ improperly discounted his credibility. To the contrary, the ALJ reasonably questioned plaintiff's credibility based on plaintiff's report of his daily activities and his misrepresentation to the consultative examiner, Dr. Nutter, that he had quit smoking seven years earlier. (Tr. 23). The ALJ's credibility determination is entitled to a high degree of deference by this Court and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. In this case, the ALJ's credibility finding is supported by substantial evidence and should not be disturbed by the Court. Accordingly, plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: 3/29/2011

Karen L. Litkovitz
United States Magistrate Judge

27

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARK PELFREY,                                        Case No. 1:10-cv-159
     Plaintiff                                        Weber, J.
                                                     Litkovitz, M.J.

    vs


COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
    Defendant


## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R").  That period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

28